IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-02844-NRN

LITTLE JOE DEHERRERA,

Plaintiff,

v.

ANDREW M. SAUL,[1] Commissioner of Social Security,

Defendant.

---

## OPINION AND ORDER

---

**N. Reid Neureiter**
**United States Magistrate Judge**

The government determined that Plaintiff Little Joe DeHerrera was not disabled for purposes of the Social Security Act. AR[2] 12. Mr. DeHerrera has asked this Court to review that decision. The Court has jurisdiction under 42 U.S.C. § 405(g), and both parties have agreed to have this case decided by a U.S. Magistrate Judge under 28 U.S.C. § 636(c). Dkt. #11.

## Factual Background

Mr. DeHerrera had his left leg amputated below the knee as a result of a motor vehicle accident in 1996. In 2015, he had a fall that further injured his left

---

[1] On June 4, 2019, the Senate confirmed Andrew M. Saul as Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul should be substituted for Nancy A. Berryhill, former Acting Commissioner of Social Security, as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] All references to "AR" refer to the sequentially numbered Administrative Record filed in this case. Dkt. ##9, and 9–1 through 9-9.

leg. Mr. DeHerrera insists that he cannot use a prosthetic device for more than a few hours a day because of nerve pain "like electric shocks" and tenderness on his stump. He claims to have difficulty sitting, standing, and walking and has reported an inability to exercise because of pain in his stump. He testified that he suffers from chronic pain in his back and lower extremities. He also claims to suffer from depression and anxiety which have caused him to fear accidents and feel like he needs to defend himself, as well as some social issues getting along with others. He also testified that he has difficulty with his memory and concentration. He has attempted suicide four times, and in 2015 a medical provider indicated Mr. DeHerrera had a "passive preoccupation with suicide." He takes Neurontin for pain, and Elavil for depression. Despite these complaints, the ALJ found that Mr. DeHerrera was not disabled within the meaning of Social Security regulations such that he would be entitled to an award of benefits.

## Standard of Review

In Social Security appeals, the Court reviews the decision of the administrative law judge ("ALJ") to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied. *See Pisciotta v. Astrue,* 500 F.3d 1074, 1075 (10th Cir. 2007). "Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Raymond v. Astrue*, 621 F.3d 1269, 1271–72 (10th Cir. 2009) (internal quotation marks omitted). The Court "should, indeed must, exercise common sense" and "cannot insist on technical perfection." *Keyes-Zachary v.*

*Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The Court cannot reweigh the evidence or its credibility. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

Nonetheless, the determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. *Fulton v. Heckler*, 760 F.2d 1052, 1055 (10th Cir. 1985). Ultimately, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## **Background**

At the second step of the Commissioner's five-step sequence for making determinations,[3] the ALJ found that Mr. DeHerrera has the following severe impairments: (1) left below-the-knee amputation; (2) affective disorder; and (3) anxiety disorder. AR 17. The ALJ noted that Mr. DeHerrera had a history of alcohol abuse but that there was no medical evidence of a substance abuse disorder, and concluded the condition was in remission. AR 18.

---

[3] The Social Security Administration uses a five-step sequential process for reviewing disability claims. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988.) The claimant has the burden of proof through step four; the Social Security Administration has the burden of proof at step five. *Lax*, 489 F.3d at 1084.

The ALJ then determined at step three that Mr. DeHerrera "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in the regulations. *Id.* Because he concluded that Mr. DeHerrera did not have an impairment or combination of impairments that meets the severity of the listed impairments, the ALJ found that Mr. Herrera has the following residual functional capacity ("RFC"):

> . . . [Mr. Herrera] has the residual functional capacity to perform a light work as defined in 20 CFR 416.967(b) except that he can lift 20 pounds occasionally and ten pounds frequently; sit six hours in an eight-hour workday; and stand and/or walk four hours in an eight-hour workday and stand and/or walk four hours in an eight-hour workday. The claimant can never kneel or crawl, but can otherwise frequently stoop and crouch. Mentally the claimant can meet all basic demands of unskilled work at the substantial gainful activity level on a sustained basis. He is limited to understanding, remembering, and carrying out simple instructions, simple work-related decisions, and cannot deal with more than routine changes in work settings. The claimant has a social impairment that would preclude any work that would require him to have more than occasional interaction with the public.

AR 20-21. The ALJ found that Mr. DeHerrera had no past relevant work but concluded that he was capable of making a successful adjustment to other work that exists in significant numbers in the national economy. AR 28. Accordingly, Mr. DeHerrera was deemed not to have been under a disability since July 15, 2015. *Id.*

## Analysis

Mr. DeHerrera argues that the ALJ's decision should be reversed because his finding that Mr. DeHerrera was not disabled is not supported by substantial evidence. Specifically, Mr. DeHerrera contends that the ALJ did not properly assess the consistency of Mr. DeHerrera's statements with the medical evidence,

4

did not properly weight the opinion evidence, and failed to order a consultative examination. The Court finds reversible error on the part of the ALJ and remands the case for further proceedings consistent with this opinion.

**I.      Consistency Determination**

Mr. DeHerrera argues that the ALJ improperly assessed the consistency of Mr. DeHerrera's statements with the medical evidence. Specifically, Mr. DeHerrera asserts that the ALJ ignored evidence of disability and overemphasized evidence of no disability.

In general, "credibility determinations are peculiarly the province of the finder of fact and should not be upset if supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 390–91 (10th Cir. 1995). That said, the ALJ should expressly link his credibility assessment to specific evidence in the record. *Id.* at 910. *See also Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). With respect to the issue of whether pain is disabling, a "claimant is entitled to have his nonmedical objective and subjective testimony of pain evaluated by the ALJ and weighed alongside the medical evidence." *Kepler*, 68 F.3d at 390. The framework for the proper analysis of subjective evidence of pain involves consideration of three factors that the Court must consider: (1) whether Mr. DeHerrera established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and Mr. DeHerrera's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, his pain is in

fact disabling. See *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987). *See also Branum v. Barnhart*, 385 F.3d 1268, 1273 (10th Cir. 2004).

In determining whether Mr. DeHerrera's subjective complaints are credible, the ALJ should consider various factors, such as:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Branum*, 385 F.3d at 1273–74 (quoting *Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991)).

Here, the ALJ found that Mr. DeHerrera's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but found Mr. DeHerrera's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record. AR 22. The ALJ found that the medical evidence in the record did not "reveal any significant clinical findings that would support the claimant's severe subjective complaints or allegations of disability." AR 24. Ultimately, the ALJ's view of the medical evidence was that it did not support the "level of symptomology" alleged by Mr. DeHerrera. AR 23. In particular, the ALJ found the fact that Mr. DeHerrera did not follow through after getting a referral for an MRI scan of his right knee diminished the persuasiveness of Mr. DeHerrera's allegations and suggested that his symptoms were not as severe as alleged. AR 25. But, the ALJ did not ask Mr. DeHerrera about his

failure to get the MRI at the hearing. AR 35–55. He was required to do so. *See, e.g., Lee v. Barnhart*, 117 F. App'x 674, 681 (10th Cir. 2004) (noting that if an ALJ is going to rely on a failure to get treatment as a reason to discount the claimant's credibility, the ALJ has a duty to ask as part of the development of the record why a claimant did not seek treatment). The Court is similarly troubled that the ALJ discounted Mr. DeHerrera's complaints about pain in the stump on his left leg, depression, and anxiety based on his apparent failure to get an MRI on his right knee.

In addition, while acknowledging that Mr. DeHerrera experienced "some" pain, the ALJ discounted the impact of the pain on Mr. DeHerrera because he could perform some routine activities of daily living and was able to work while he was incarcerated. AR 23. The ALJ stated that it "would appear that such activities, including daily work activity, require significant functional ability and some consistent form of attention and contact with others, and are not consistent with the claimant's allegations of disabling physical and mental systems." *Id.* This reasoning is insufficient. *See Marr v. Colvin*, 67 F. Supp. 3d 1267, 1272 (D. Colo. 2014) ("The suggestion that plaintiff's report of his limited activities of daily living could not be fully credited because it was not objectively verifiable is little more than a way of restating the ALJ's incredulity.").

The Court also notes that ALJ did not question Mr. DeHerrera about how frequently and for how long he was working while incarcerated. Mr. DeHerrera's testimony indicates he worked "a little bit" while he was incarcerated. AR 43.

7

Given the weight the ALJ gave to the fact that Mr. DeHerrera was working, the Court finds that more information about Mr. DeHerrera's work is necessary.

Finally, it appears that the ALJ gave great weight to Mr. DeHerrera's statements about things he could do despite his limitations while giving no weight to his statements about the limiting effects of his impairments. This type of analysis is an "unfair characterization of the record." *Kaighn v. Colvin*, 13 F. Supp. 3d 1161, 1174 (D. Colo. 2014). The ALJ did not specifically address how activities like cooking, light household chores, and shopping[4] support his conclusion that Mr. DeHerrera's physical and mental limitations would not prevent him from being able to perform tasks at work consistently such that he could keep a job. *See Morgan v. Colvin*, 68 F. Supp. 3d 1351, 1357 (D. Colo. 2014) ("activities of daily living rarely translate well into a determination of what a claimant can do on a sustained basis in the workplace"); *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) ("In order to engage in gainful activity, a person must be capable of performing on a reasonably regular basis.").

The ALJ gave considerable weight to the opinion of Dr. Mars, an examining physician, stating that it was "generally consistent with other objective facts in the record." AR 26. Dr. Mars' report indicates that Mr. DeHerrera had callouses on his stump but no calluses on his hands, which the doctor would have expected to find if Mr. DeHerrera was relying primarily on his wheelchair to get around. AR 26. However, neither Dr. Mars nor the ALJ acknowledged that

---

[4] The Court notes that Mr. DeHerrera testified that he did not shop by himself but went with his wife to do the grocery shopping. AR 39.

8

Mr. DeHerrera's medical records indicate that at one point he was "spending too much time in wheelchair" (AR 268), and that he had housing and medical restrictions that required "no stairs" and "no prolonged standing over specified time." AR 363. Another medical record indicates that Mr. DeHerrera complained of pain in his stump that felt like "electric shocks," and had "objective" evidence of a "flat affect," tenderness when his stump was palpitated, and "hyperesthesia on sensory check." AR 300-01. The pain and its impact on Mr. DeHerrera were sufficient enough to warrant a "nonformulary drug request" for pain medication while Mr. DeHerrera was incarcerated. *Id.*

The ALJ also noted that the record indicates Mr. DeHerrera took relatively infrequent trips to the doctor for his allegedly disabling symptoms. AR 23. However, an ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7p. It is difficult for the Court to measure what the ALJ means by "relatively infrequent," but the Court finds that there is significant evidence in the record that Mr. DeHerrera sought medical treatment for his pain, depression, and anxiety, both while he was incarcerated and after he was released. AR 240-389 & 398-401. Again, however, the ALJ did not ask Mr. DeHerrera why he did not seek medical treatment. This failure requires remand to further develop the record.

Finally, Mr. DeHerrera argues that the ALJ did not consider all of the evidence—both objective and subjective—that Mr. DeHerrera's pain was disabling. The Court agrees. The ALJ's discussion of Mr. DeHerrera's medical record glosses over Mr. DeHerrera's persistent complaints about nerve pain in his stump and anxiety as early as January 2014 (AR 274-75), citing a note in Mr. DeHerrera's medical records from when he was incarcerated that said he appeared to be "acting anxious" and "drug seeking behavior" was suspected. At the same time, as indicated in the very same report, Mr. DeHerrera was given a prescription to address his complaints. *Id.* An ALJ may not pick out portions of a medical report that favor denial of benefits, while ignoring those favorable to disability. *Lee*, 117 F. App'x at 678. *See also Marr*, 67 F. Supp. 3d at 1271 (remanding where ALJ stated that "the physical findings and clinical data did not corroborate plaintiff's complaints" and noting that an ALJ's assessment of the credibility of a claimant's subjective reports of pain was "critical").

The Court finds Judge Blackburn's reasoning in the *Marr* case instructive and applicable to the ALJ's opinion here:

> Although the medical evidence the ALJ did review was recounted in some detail . . . he seems not to have actually analyzed any of it. Instead, the ALJ merely recited the content of the record and then stated his ultimate conclusions. . . . By failing to specifically link his conclusions to any particular evidence, the ALJ made it impossible for this court to tell in precisely what way the ALJ believed the evidence failed to support plaintiff's claims. This asserted reason thus does not bear scrutiny.

*Marr*, 67 F. Supp. 3d at 1271.The Court finds most troubling the circular nature of the ALJ's analysis. In discounting Mr. DeHerrera's symptoms, it appears that the ALJ relied on the medical opinions to support his conclusion that Mr. DeHerrera

10

was not credible, while at the same time, according the medical opinions great weight because they were consistent with the ALJ's finding that Mr. DeHerrera's symptoms were not as severe as he claimed. AR 26-27. Accordingly, the Court remands this matter for further proceedings so that the ALJ can reevaluate the credibility of Mr. DeHerrera's subjective complaints of pain and mental limitations, providing legitimate reasons specifically tied to the evidence in the record.

II.     **Consultative Examination.**

Mr. DeHerrera argues that the ALJ was required to order a consultative examination because there was "extensive evidence" of his severe mental health impairments. Mr. DeHerrera argues that Dr. Hanze, who neither treated nor examined Mr. DeHerrera, gave an opinion that was markedly inconsistent with the record. The ALJ found Dr. Hanze's opinion consistent with the other medical opinions, but, had the ALJ accounted for all of the evidence in the record and not just evidence that the supported a conclusion of no disability, he could have concluded that Dr. Hanze's opinion was not consistent with other evidence in the record.

An ALJ has broad latitude in deciding whether to order consultative examinations. *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir.1997). Once a claimant has presented evidence suggestive of a severe impairment, it "becomes the responsibility of the ALJ to order a consultative evaluation if such an examination is necessary or helpful to resolve the issue of impairment." *Id.* at 1167. The ALJ should order a consultative exam when evidence in the record establishes the reasonable possibility of the existence of a disability and the

result of the consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability. *Id.* at 1169. A consultative examination also may be required if there is a direct conflict in the medical evidence, the medical evidence is inconclusive, or when additional tests are needed to explain a diagnosis already in the record. *Id.* at 1166. When a claimant is represented by counsel, an ALJ does not generally have a duty to order a consultative examination unless requested by counsel or the need is clearly established in the record. *Id.* at 1168.

Here, the record does not reflect that counsel requested a consultative examination, which means the ALJ was required to order a consultative examination if the need for one was "clearly established in the record." *Id.* While such an examination would have been helpful in this case because the state reviewing psychologist, Dr. Hanze, did not examine Mr. DeHerrera, the Court does not find that the need for a consultative examination was clearly established in the record. Nevertheless, as the Court remands with respect to the ALJ's findings as to the reliability of Mr. DeHerrera's subjective complaints, the Court finds that a consultative examination would be appropriate, and orders that the ALJ request a consultative examination of Mr. DeHerrera, to allow for further development of the record to address issues identified in this opinion.

A proper evaluation of all of the evidence in the record and an in-person assessment may well result in a different outcome for Mr. DeHerrera. As such, the ALJ's errors cannot be considered harmless. The Court cannot conclude that no reasonable factfinder could have reached a different conclusion had the ALJ's

decision been adequately explained and supported by substantial evidence. *See Allen v. Barnhart,* 357 F.3d 1140, 1145 (10th Cir. 2004). (concluding that, with certain "caveats, it . . . may be appropriate [in Social Security appeals] to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance, i.e., where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way"). Conversely, and for the same reason, the Court does not find that this case presents an appropriate occasion to exercise the Court's discretion to direct an award of benefits in Mr. DeHerrera's favor. *Davis v. Astrue*, No. 09-cv-00881-REB, 2010 WL 3835828, at *6 (D. Colo. Sept. 23, 2010). Accordingly, the case must be remanded for further proceedings.

## Conclusion

For the reasons set forth above, the Commissioner's decision is **REVERSED** and **REMANDED** for additional proceedings consistent with this opinion.

Dated this 8th day of October, 2019.

BY THE COURT:

*N. Reid Neureiter*

N. Reid Neureiter
United States Magistrate Judge